(C. D. 1438)

E. DILLINGHAM, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 2, 1952)

*Sharretts, Hillis & Paley* (*Howard C. Carter* of counsel) for the plaintiff.
*Charles J. Wagner,* Acting Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

EKWALL, Judge: This is a protest arising at the port of Ogdensburg, N. Y., against the collector's refusal to accept an entry of four Inconel metal discs from Canada under section 308 (1) of the Tariff Act of 1930, as amended, which provides for the temporary free importation, under bond, for exportation of articles to be repaired, altered, or otherwise changed in condition by processes which do not result in articles manufactured or produced in the United States. The collector's refusal was on May 18, 1950, and this protest was timely filed by the customs broker, plaintiff herein. The importer then filed a consumption entry and deposited the estimated duties. Entry No. 1177 was filed on May 22, 1950, and estimated duties of $814.50 were paid. Subsequently, supplemental duties of $101.70 were assessed and paid on June 12, 1950, making total duties paid of $916.20.

The case came on for hearing at the port of Ogdensburg, N. Y., on July 10, 1951, at which hearing it was submitted by both plaintiff and defendant on a written stipulation of fact, as follows:

IT IS HEREBY STIPULATED AND AGREED, by and between counsel for the plaintiff and the Assistant Attorney General, for the United States, subject to the approval of the Court.

1. That the merchandise consists of four Inconel metal discs, each one hundred thirty and five-eighths inches in diameter, manufactured in Canada by John Inglis Co., Ltd. of Toronto, Canada;

2. That said discs were shipped from Canada to the Lukens Steel Co., Coatesville, Pa. to be processed as follows:

(a) the edges were to be bent to form a flange,

(b) the discs were to be pressed and spun to dish-like shapes having an outside diameter of one hundred twelve and one-half inches;

3. That prior to the shipment of the discs to the United States, the foregoing information was submitted to the Collector of Customs at Odgensburg, N. Y. by E. Dillingham, Inc., custom house brokers, and permission was requested to file an entry under section 308 (1) of the Tariff Act of 1930, as amended;

4. That said request to make entry under section 308 (1) was denied on May 18, 1950 and consumption entry No. 1177 was filed on May 22, 1950 in order to secure possession of these articles.

5. That the processing described in paragraph 2 above was performed by the Lukens Steel Co. and the discs were returned to the shipper, John Inglis Co., Ltd. for use as heads or covers for an unfired vessel used to digest wood pulp in a cellulose mill;

6. That the instant protest was filed on July 17, 1950 against the decision of the collector dated May 18, 1950 denying said request;

7. That the protest be submitted on this stipulation;

8. That the plaintiff have thirty days after transcript to prepare and file a brief; and

9. That the defendant have thirty days thereafter to prepare and file a brief.

The applicable provisions of section 308 (1) of the Tariff Act of 1930, as amended by section 4 of the Customs Administrative Act of 1938, are:

SEC. 308. TEMPORARY FREE IMPORTATION UNDER BOND FOR EXPORTATION.

The following articles, when not imported for sale or for sale on approval, may be admitted into the United States under such rules and regulations as the Secretary of the Treasury may prescribe, without the payment of duty, under bond for their exportation within six months from the date of importation, which period may, in the discretion of the Secretary of the Treasury (whether such articles are imported before or after this section becomes effective), be extended, upon application, for a further period not to exceed six months:

[Section 4, Customs Administrative Act of 1938]:

(1) Articles to be repaired, altered, or otherwise changed in condition by processes which do not result in articles manufactured or produced in the United States;

It is apparent from the record that the Inconel discs were only partly manufactured in Canada and were not usable for the purposes intended when imported into the United States to be processed, as outlined in the stipulation set forth herein. It seems clear that such processing of these metal discs in the United States was necessary to make them ready for their intended use as heads or covers for an unfired vessel used to digest wood pulp in a cellulose mill. Plaintiff claims that the processes performed upon these articles in the United States were alterations or changes in condition which did not result in articles manufactured or produced in the United States within the meaning and intent of said section 308 (1), as amended. A number of interesting cases on the question of what a manufactured article consists of was cited by counsel for plaintiff in its brief, but we do not consider them applicable to the facts in the instant case.

A somewhat analogous situation arose in the case of *United States* v. *The J. D. Richardson Company*, 36 C. C. P. A. (Customs) 15, C. A. D. 390, cited by the defendant herein in its brief. This case involved the question of whether "flat bands" or "rims," not flanged,

exported by the Kelsey-Hayes Wheel Co. of Detroit, Mich., to its plant in Windsor, Canada, for the purpose of having the rims "flanged" by three pressing operations performed in said Canadian plant and thereafter returned to the United States, were subject to duty under paragraph 1615 of the Tariff Act of 1930, as amended by the addition of subparagraph (g) thereof, by the Customs Administrative Act of 1938.

We believe it will be instructive to set forth the opinion of the late Judge Hatfield, concurred in by the other members of the appellate court, reversing the trial court, as follows:

Merchandise, consisting of approximately 17,000 tank idler wheel "flanged" rims, was assessed for duty by the collector at the port of Detroit at 27½ per centum ad valorem as parts of machines, under paragraph 372 of the Tariff Act of 1930.

It appears from the record that so-called "flat bands" or "rims," not flanged, were exported by the Kelsey-Hayes Wheel Company of Detroit, Michigan, to its plant in Windsor, Canada, for the purpose of having the rims "flanged," in accordance with the specifications and requirements of the Ordnance Department of the United States Army; that the articles were "flanged" by three pressing operations performed in the Canadian plant; and that they were returned to the Kelsey-Hayes Wheel Company plant in Detroit and used exclusively as finished parts of an assembly of idler wheels for use on the T-26 tank which weighed approximately thirty tons.

It further appears from the record that it was necessary, for their practical use and to conform to the specifications of the Ordnance Department of the United States Army, that the rims contain flanges to strengthen them and that they could not be used in their condition as exported, for the purposes hereinbefore stated. It clearly appears from the record that the processes to which the so-called "rims" were subjected in Canada were necessary to make them completed parts of machines and that when, by the processes performed in Canada, they were returned to the Kelsey-Hayes Wheel Company in Detroit, they were completed "flanged" rims and all that was necessary to put them in condition for use as parts of the assembly of idler wheels for use on the T-26 tank was that they be cleaned. It is not argued that, in their exported condition, they could have been used as parts of any other machines.

The importer, who acted as customs agent for the Kelsey-Hayes Wheel Company, protested the collector's classification, claiming that the rims were dutiable at 27½ per centum ad valorem under paragraph 372, *supra*, upon the value of the so-called "alterations" of the rims, in accordance with paragraph 1615 of the Tariff Act of 1930, as amended by paragraph 1615 (g) of the Customs Administrative Act of June 25, 1938.

Paragraph 372, *supra*, so far as pertinent reads:

 \* \* \* all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem; *Provided,* That parts, not specially provided for, wholly or in chief value of metal \* \* \* shall be dutiable at the same rate of duty as the articles of which they are parts: \* \* \*

Paragraph 1615 (g), *supra*, reads:

 Any article exported from the United States for repairs or alterations may be returned upon the payment of a duty upon the value of the repairs or alterations at the rate or rates which would apply to the article itself in

its repaired or altered condition if not within the purview of this subparagraph.

Customs Regulations of the United States, 1943, section 10.8 (*a*) reads:

10.8 Articles exported for repairs or alterations.—(*a*) For the purposes of paragraph 1615 (g), Tariff Act of 1930, as amended, the term "repairs or alterations" shall be held to mean any restoration, change, addition, renovation, cleaning, or other treatment which does not destroy the identity of the article exported or create a new or different article.

The trial court sustained the protest of the importer, holding that the articles had merely been altered in Canada, within the purview of the term "alterations" as used in paragraph 1615 (g), *supra*, and that the rate of duty of 27½ per centum ad valorem should be applied only to the value of the processes of producing the flanges in Canada, and not to the value of the entire rims.

We have given careful consideration to the views expressed by the court below and to those of counsel for appellee, but are constrained to disagree with those views.

It clearly appears from the record that the articles exported to Canada were not parts of machines but were manufactures of metal. It is true that they had been so processed as to be dedicated to the use of making rims for the T–26 tank. However, they were not .completed parts but, on the contrary, required the manufacturing processes hereinbefore referred to in order to complete them as "flanged" rims for their intended use. Broadly, it may be said, as seems to have been held by the trial court, that the term "alterations" of articles means any manufacturing process to which articles may be subjected. We are of opinion, however, that the Congress did not intend by the term "alterations" in paragraph 1615 (g), *supra*, to mean that uncompleted articles, such as those here involved, manufactured in the United States or imported into the United States, could be exported to a foreign country and there manufactured into completed articles such as those in the case at bar, and when returned to the United States, be subject only to duties on the so-called "alterations" provided for in paragraph 1615 (g), *supra*. It is clear from paragraph 1615 (g), however, that Congress intended to broaden the scope of paragraph 1615 of the Tariff Act of 1930 and to permit articles to be exported not only for the purpose of repairs but for alterations thereof, and to be returned to the United States upon the payment of a duty upon the value of the alterations, or repairs, at which the articles would be subject if imported in their altered or repaired condition. We are of opinion, however, that it was not intended by the word "alterations," contained in paragraph 1615 (g), *supra*, to permit articles, such as in the instant case, to be exported in an unfinished condition which could not have been classified as parts of machines, and so manufactured abroad that upon their return would be properly dutiable as parts of machines. Had the "unflanged" articles, exported to Canada, been imported into the United States in an "unflanged" condition, in view of the record in this case, they certainly could not have been classified as parts of machines under paragraph 372, *supra*.

We have frequently held that a part of an article is something necessary to the completion of that article and that it is an integral, constituent, or component part without which the article to which it is to be joined could not function as such article. See *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851.

It may be observed, furthermore, that paragraph 372, *supra*, provides "* * * That parts, not specially provided for, wholly or in chief value of metal * * * shall be dutiable at the same rate of duty as the articles of which they are parts, * * *" and it also provides for "* * * all other machines, finished or un-

finished, not specially provided for, 27½ per centum ad valorem: * * *" So far as the issues here are concerned, that paragraph differs from paragraph 372 of the Tariff Act of 1922 which provided for "* * * all other machines *or parts thereof, finished or unfinished,* not specially provided for, 30 per centum ad valorem: * * *" [Italics ours.] It is apparent, therefore, that although paragraph 372 of the Tariff Act of 1922 provided for parts, finished or unfinished, of all other machines not specially provided for, paragraph 372 of the Tariff Act of 1930 does not provide for parts of machines in an unfinished condition. The change in the two paragraphs obviously discloses a congressional intent to limit the provision for parts of machines, not specially provided for, in paragraph 372 of the Tariff Act of 1930, to those that are in a finished condition.

Had the involved articles been completed, and for some reason or other required some alterations, a different issue would have been presented.

It is not argued here that the imported "flanged rims" are not finished parts of machines.

We are of the opinion that the so-called "rims," exported to Canada, were not subjected to mere alterations within the purview of paragraph 1615 (g), *supra,* and that the "flanged" rims were properly assessed by the collector as parts of machines at 27½ per centum ad valorem, under paragraph 372 of the Tariff Act of 1930.

See also *Seideman Products Co.* v. *United States,* 37 C. C. P. A. (Customs) 83, C. A. D. 423. We cannot escape the conclusion that the metal discs herein were only partly manufactured when imported. The bending of the edges to form a flange and the pressing and spinning of the discs to dish-like shapes, reducing the outside diameter from 130⅝ inches to 112½ inches, resulted in a completion of the manufacture so that they were ready for their intended use. This was not in the nature of repairs or alterations of finished articles but additional and vital steps in their manufacture which converted them into new products.

Counsel for the defendant in its brief contends that the plaintiff is precluded from seeking recovery of the duties imposed herein since no protest has been lodged against the classifying act taken by the collector. However, in view of our conclusions heretofore reached, we feel it is unnecessary to pursue this question further.

The protest is overruled and the action of the collector is affirmed. Judgment will be rendered accordingly.